UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| O.H.; and C.D., <br><br> Plaintiffs, <br><br> v. <br><br> SECRET HARBOR, a nonprofit corporation, <br><br> Defendant. | CASE NO. 2:23-cv-60 <br><br> ORDER DENYING SECRET HARBOR'S MOTION TO DISQUALIFY COUNSEL AND MOTION FOR SANCTIONS |

## 1.  INTRODUCTION

On July 30, 2024, the Court held a hearing on Secret Harbor's motions to disqualify Plaintiffs' attorneys, Dkt. No. 122, and for sanctions, Dkt. No. 125. The Court denied both motions. This Order elaborates on and memorializes the Court's oral ruling.

## 2.  BACKGROUND

This case involves the alleged abuse of children at Secret Harbor—a state-licensed group home for "troubled boys." Dkt. No. 1 at 2. Plaintiffs C.D. and O.H. were residents of Secret Harbor. This federal case is one of several cases against Secret Harbor involving the physical, emotional, and sexual abuse of minors. The

ORDER - 1

other cases are proceeding in Skagit County Superior Court. The law firm of Pfau Cochran Vertetis Amala ("PCVA") represents the Skagit County plaintiffs and Plaintiffs in this case.

Plaintiffs' claims against Secret Harbor do not deal solely with abuse perpetrated by Secret Harbor's agents; they also encompass Secret Harbor's alleged failure to prevent the minors in their care from abusing each other. Plaintiffs allege:

> The isolated group home had a longstanding track record of both staff sexually and physically abusing residents, as well as residents sexually and physically abusing other residents. When abuse was reported by residents, Secret Harbor staff would dismiss the reports as fabricated, decline to report the incidents to Child Protective Services, blame the victims, and fail to take steps necessary to prevent future incidents of abuse. Staff would also punish the children with physical violence or forced child labor.

Dkt. No. 1 at 2. None of the plaintiffs in this case nor in Skagit County Superior Court have sued each other. Rather, they allege that Secret Harbor was legally responsible for creating a safe environment and failed. *See id.*

## 3.  DISCUSSION

### 3.1  Motion to Disqualify.

Secret Harbor argues that PCVA cannot represent Plaintiffs without violating the Washington Rules of Professional Conduct ("WRPCs") due to conflicts of interest between their clients. Secret Harbor's primary argument is that other plaintiffs have accused C.D. of "inappropriate sexual conduct," and that these accusations create a conflict that requires disqualifying PCVA here. *See* Dkt. No. 122 at 3, 5–8. Secret Harbor argues that "PCVA's representation of alleged sexual abusers and their victims, in this lawsuit and in other related matters raises

ORDER - 2

questions about whether Plaintiffs have entered into agreements (potentially as part of an attempted conflict waiver) not to execute on claims against each other or to corroborate claims of one another." *Id.* at 7.

### 3.1.1    Standing.

PCVA argues that Secret Harbor lacks standing in the first place to complain about a possible conflict of interest. The Court agrees. "'As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the … client moves for disqualification.'" *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir.1993)). When considering motions to disqualify by nonclients, the Ninth Circuit has "difficulty seeing how [a nonclient] has standing to complain about a possible conflict of interest arising out of [a] common representation of [named parties] …, having nothing to do with [the nonclient's] own representation." *Id.* Thus, the prevailing view among courts in this district is that a nonclient, moving party may move for disqualification, but only if the minimal constitutional requirements for Article III standing are met. *See U.S. Fire Ins. Co. v. Icicle Seafoods, Inc.*, 523 F. Supp. 3d 1262, 1269–70 (W.D. Wash. 2021); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006).

Standing requires, among other things, that the moving party "suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). A nonclient can demonstrate the requisite "personal stake in the motion to disqualify" by showing that the alleged "ethical breach so infects the

litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims." *FMC Techs.,* 420 F. Supp. 2d at 1156 (quoting *Colyer v. Smith*, 50 F. Supp. 2d 966, 971–72 (C.D. Cal. 1999)).

Secret Harbor lacks standing to bring this Motion, as it has not asserted an ethical breach by PCVA that impacts its "interest in a just and lawful determination of [its] claims." *FMC Techs., Inc.*, 420 F. Supp. 2d at 1156. The ethical obligations that Secret Harbor raise deal with PCVA's duty of loyalty to its clients, which has nothing to do with Secret Harbor. Secret Harbor broadly asserts its general concern for Plaintiffs' rights in this case as justification for disqualifying Plaintiffs' attorneys at this late stage in the litigation. Dkt. No. 122 at 13 ("[O]bvious conflicts of interests pose a significant risk to PCVA's responsibilities to their clients."). But Secret Harbor does not explain how its interests have been or will be injured by this supposed conflict. Indeed, Secret Harbor confirmed at the hearing that it has experienced no harm or prejudice because of the alleged ethical violation. Thus, Secret Harbor lacks standing to bring its Motion to Disqualify.

### 3.1.2   Washington Rules of Professional Conduct.

Even if Secret Harbor had standing to bring this Motion, disqualification for ethical violations is a "drastic measure" that is unwarranted here. *See FMC Techs., Inc.*, 420 F. Supp. 2d at 1157.

Courts in this District apply the Washington Rules of Professional Conduct ("WRPC") to ethical disputes and concerns. LCR 83.3(a)(2). Secret Harbor alleges

ORDER - 4

that PCVA has violated the WRPCs governing conflicts of interest. Under WRPC 1.7, a lawyer has a "concurrent" conflict of interest when:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Wash. RPC 1.7(a). Clients can waive conflicts of interest except when:

> (1) the lawyer does not believe they can "provide competent and diligent legal advice to each affected client,"
>
> (2) "the representation is [] prohibited by law,"
>
> (3) the representation involves "the assertion of a claim by one client against another client represented by the lawyer in the same litigation," or
>
> (4) the effected clients did not give informed consent, in writing, to waive the conflict.

Wash. RPC 1.7(b). WRPC 1.8 also covers concurrent conflicts of interests, providing that a "lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client gives informed consent."

WRPC 1.9 governs conflicts of interest between a lawyer's former clients and current clients. It states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Wash. RPC 1.9(a).

ORDER - 5

Secret Harbor has not shown that PCVA violated the WRPCs governing conflicts of interest. First, Secret Harbor alleges that a conflict exists because "C.D. testified [that] O.H. engaged in inappropriate sexual conduct," but "O.H. testified otherwise." Dkt. No. 122 at 3. Secret Harbor argues that "O.H. flatly denied C.D.'s testimony," and thus an un-waivable conflict of interest exists. *Id*.

Upon review of the record, however, the Court finds that Secret Harbor's characterization of the testimony is incorrect. O.H. did not "flatly den[y]" C.D.'s account that O.H. had sexual contact with other residents, as Secret Harbor claims. *See* Dkt. No. 122 at 3. To the contrary, O.H. testified that he had sexual encounters with residents and a staff member at the facility. Dkt. No. 124 at 26. The Court also rejects Secret Harbor's claim that O.H.'s testimony "conflicted" with C.D.'s testimony because C.D. recalled one instance of oral sex between O.H. and "a guy" in the bathroom that O.H. could not remember. *Compare id*. at 42–43 *with id*. 124 at 65–66. The other conflicts in testimony that Secret Harbor highlights are similarly unavailing.

But more importantly, even if there were meaningful conflicts between the plaintiffs' statements, it is unclear why such conflicts would necessitate counsel's disqualification. Conflicts in testimony go to credibility, which the jury weighs. They are not in-and-of-themselves conflicts of interest under the WRPCs.

Next, Secret Harbor argues that a conflict of interest exists because one Skagit County plaintiff testified that he witnessed O.H. and C.D. have sexual encounters while at Secret Harbor. Dkt. No. 122 at 6. Again, it is unclear why this fact, if true, would create a conflict of interest necessitating counsel's

disqualification. The crux of these lawsuits is that Secret Harbor created an environment where its agents groomed and abused children, and where inappropriate sexual conduct was normalized. Thus, the Court fails to see how sexual contact between O.H. and C.D. at Secret Harbor creates a conflict of interest at all—much less a conflict that requires the Court to disqualify their attorneys.

Secret Harbor also argues that an un-waivable conflict of interest exists because two of PCVA's clients have testified that O.H. engaged in sexual conduct with them while at Secret Harbor. *See* Dkt. No. 122 at 5–7. But to the extent that this situation poses a conflict of interest, that conflict is waivable, as long as the waiver is in writing, because:

(1) PCVA believes it can "provide competent and diligent legal advice to each affected client,"

(2) "the representation is not prohibited by law," and

(3) "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation."

*See* Wash. RPC 1.7(b), 1.9. Ultimately, the plaintiffs' interests are aligned against Secret Harbor in this litigation, and the WRPCs do not preclude them from waiving the potential conflicts that Secret Harbor raises. *See* Wash. RPC 1.7(b), 1.9.

To be sure, no law or rule requires plaintiffs to pursue *all* potential claims that they may have against each other. In fact, the law establishes that plaintiffs may pursue their claims as they see fit. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (discussing the well-pleaded complaint rule and reiterating that plaintiffs control their claims); *Prime Time Sports Grill, Inc. v. DWT 1991*

ORDER - 7

*Underwriting Ltd.*, Case No. 8:20-cv-771-CEH-JSS, 2020 WL 3402399, at *1 (M.D. Fla. June 19, 2020) (Plaintiff "has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties."); *Oliver v. Sabens*, Case No. 19-cv-00559-NJR, 2019 WL 2357308, at *2 (S.D. Ill. June 4, 2019) ("Plaintiff is in the best position to decide which claims he will pursue."). Here, it appears that the plaintiffs have decided to uniformly pursue claims against Secret Harbor for the alleged grooming and abuse that they experienced as children rather than go after each other. These fundamental litigation choices are ethical and strategic in nature, and they are the *plaintiffs'* to make—not Secret Harbor's.

### 3.2   Motion for Sanctions

Turning to Secret Harbor's Motion for Sanctions, Secret Harbor requests sanctions on three grounds: (1) violating the Parties' stipulated protective order; (2) failing to supplement discovery; and (3) harassing and annoying a non-party witness by cancelling his deposition. *See* Dkt. No. 125 at 8–13. As discussed below, none of the alleged discovery violations warrant sanctions under Federal Rule of Civil Procedure 37 or the Court's inherent powers.

#### 3.2.1   Alleged violation of a Court order.

Rule 37(b)(2) allows the Court to impose sanctions when a party violates a discovery order. Fed. R. Civ. P. 37(b)(2). Secret Harbor claims that Plaintiffs violated the Parties' stipulated protective order by sharing confidential documents with a mediator. But Plaintiffs presented facts showing that they did not violate the protective order—facts that Secret Harbor omitted from its Motion and never

ORDER - 8

refuted. After considering the record and counsel's representations, the Court is not convinced that Plaintiffs violated the stipulated protective order and thus finds that sanctions are inappropriate.

Alternatively, the Court finds that any violation was harmless and that imposing sanctions would be unjust given the documents were shared with a mediator, not some other third party, under the auspice of Rule 408 and a separate confidentiality agreement between the parties and the mediator. *See* Fed. R. Civ. P. 37(b)(2)(A) (allowing courts to issue "just orders" as sanctions), (b)(2)(C) (requiring disobedient parties to pay expenses caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust").

### 3.2.2   Failure to supplement discovery.

Next, Secret Harbor argues that the Court should sanction Plaintiffs for their failure to supplement one of their discovery responses. Rule 37(c) imposes sanctions on a party who fails to supplement discovery responses consistent with Rule 26 "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). At the hearing, Secret Harbor conceded that Plaintiffs' failure to supplement was harmless. Sanctions are therefore unwarranted.

The Court also notes that Secret Harbor did not raise this discovery issue until it met and conferred with Plaintiffs on *this* Motion for Sanctions. Dkt. No. 128 ¶¶ 3, 5. At that time, Plaintiffs offered to supplement their discovery response, but Secret Harbor refused the supplement. *Id*. These facts also weigh against sanctioning Plaintiffs.

ORDER - 9

### 3.2.3   Alleged harassment and annoyance of a non-party witness.

In its Motion, Secret Harbor asks the Court to use its inherent powers to sanction Plaintiffs because Plaintiffs cancelled the deposition of a non-party witness ten minutes before the start time. *See* Dkt. No. 125 at 13–15. Neither party addressed this issue during the hearing. Plaintiffs' response brief asserts that they accidentally mis-calendared the deposition and did not realize their error until the deposition was about to begin. Dkt. No. 128 ¶ 11. Plaintiffs notified Secret Harbor when they learned of their mistake and immediately offered to pay the costs of the deposition. *Id.* ¶ 6. They offered to pay those costs again when Secret Harbor informed them of this Motion, but Secret Harbor refused the offer. *Id.*

Courts may use their inherent powers to impose sanctions when they find that a party acted in bad faith or engaged in "conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Plaintiffs' conduct does not indicate bad faith, nor is it "tantamount to bad faith." *See id*. Thus, the Court will not impose sanctions under its inherent powers. *See id*.

## 4.   CONCLUSION

The Court DENIES Secret Harbor's Motion to Disqualify Pfau Cochran Vertetis Amala, PLLC, Dkt. No. 122, and Secret Harbor's Motion for Sanctions, Dkt. No. 125.

Dated this 14th day of August, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 10