1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

O.H., an individual; C.D., an individual,

Plaintiffs,

CASE NO. 2:23-cv-00060-JNW

OMNIBUS ORDER

9
10

v.

11

SECRET HARBOR, a non-profit
corporation,

12

Defendant.

13
14

## 1. INTRODUCTION

15

Secret Harbor was a state-licensed group home for "troubled-boys" that

16

operated on Cypress Island, Washington, from the 1940s until 2008. Dkt. No. 147 at

17

16–18. Washington State placed Plaintiffs C.D. and O.H. at Secret Harbor as

18

children in the late 1980s, and they allege that they suffered sexual abuse while

19

residing there. They sued Secret Harbor in November 2023, alleging various

20

Washington common-law claims and a claim under the Washington Law Against

21

Discrimination (WLAD). Dkt. No. 1. This Omnibus Order resolves the Parties'

22

pending motions to exclude expert testimony, Secret Harbor's motion for summary

23

judgment, and Plaintiffs' motion for partial summary judgment. Dkt. Nos. 138, 141–143, 146 and 145.

## 2. DAUBERT MOTIONS

Both parties have designated expert witnesses to support their positions on liability, causation, and damages. Before the Court are competing motions to exclude expert testimony: Secret Harbor moves to exclude the testimony of Plaintiffs' experts Dr. Gilbert Kliman, Dkt. 141, Dr. Hasani Baharanyi, Dkt. 142, and Dr. Sherryll Kraizer, Dkt. 143, while Plaintiffs move to exclude certain opinions by Defendant's experts Dr. Richard Adler and Neal Sternberg, Dkt. 146.

### 2.1 Legal standard.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires district courts to serve as gatekeepers, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The rule permits expert testimony only when these conditions are met:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is to be applied with a "liberal thrust favoring admission, [but] it requires that expert testimony be both relevant and reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (cleaned up). Expert testimony is relevant when "the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" *Elosu*, 26 F.4th at 1024 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

When assessing reliability, the Court's focus is not on "the correctness of the expert's conclusions but [on] the soundness of [their] methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). The Court's gatekeeping function does not extend to "engag[ing] in freeform factfinding, select[ing] between competing versions of the evidence, or determin[ing] the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026. This standard reflects the principle that the court serves as "a gatekeeper, not a fact finder." *Id.* at 1024 (quoting *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)).

The proponent of expert testimony bears the burden of establishing relevance and reliability. *Daubert.*, 43 F.3d at 1316. When this burden is met, "the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565. "Shaky but admissible evidence" is to be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not exclusion. *Daubert*, 509 U.S. at 596.

1

2

**2.2   The Court denies Defendant's motion to exclude the testimony of Gilbert Kliman, M.D.**

3

4        Plaintiffs retained Dr. Gilbert Kliman, M.D., to perform a psychiatric

5   evaluation of C.D. and O.H. Along with opining on Plaintiffs' injuries and

6   prognoses, Dr. Kliman provides standard of care opinions. *See generally* Dkt. No.

7   156 at 45–121 (expert reports for C.D. and O.H.). Dr. Kliman co-authored two initial

8   reports here—one for each Plaintiff—with his colleague Dr. Hasani Baharanyi,

9   M.D. Secret Harbor argues that the Court should exclude Dr. Kliman's testimony on

10  four grounds: (1) Dr. Kliman's opinions are factually unsupported; (2) Dr. Kliman

11  did not use reliable principles and methods; (3) Dr. Kliman impermissibly opines on

12  credibility and legal issues, and (4) Dr. Kliman's testimony violates Rule 403. *See*

13  Dkt. No. 141. The Court rejects these contentions.

14       First, Dr. Kliman had sufficient facts and data under Rule 702. The record

15  shows that Dr. Kliman reviewed the files in this case and a forensic interview

16  conducted by his colleague, Dr. Baharanyi, M.D. *See* Dkt. No. 144 at 241 (Kliman

17  Dep.), 361 (same), 1190–1290 (appendices outlining and citing documents

18  reviewed). He also directed a technician to administer psychometric tests and

19  questionnaires, which he reviewed and interpreted. *See id.* at 242–43. Citing to

20  portions of Dr. Kliman's deposition, Secret Harbor argues that Dr. Kliman lacked

21  an accurate baseline for each Plaintiff, as well as a complete pre-Secret Harbor

22  history for C.D. Dkt. No. 166 at 4. But after reviewing the deposition testimony

23  cited, it doesn't show that Dr. Kliman lacked sufficient facts and data for his

opinions under Rule 702. *See Elosu,* 26 F.4th at 1025 ("sufficient facts or data . . .

1    requires foundation, not corroboration"). To the extent that Secret Harbor believes

2    Dr. Kliman should have considered other or different evidence, it may cross-

3    examine him on that point.

4        Second, Secret Harbor argues that Dr. Kliman did not use reliable principles

5    and methods because he relied too heavily on his own experience when evaluating

6    Plaintiffs' injuries. *See* Dkt. No. 141 at 10. This argument is unpersuasive,

7    particularly since Secret Harbor does not challenge Dr. Kliman's qualifications or

8    experience, thereby implicitly acknowledging his expertise in the field. As

9    Dr. Kliman testified, he learned through his professional experience that when

10   children suffer repeated trauma, including from betrayal, the injuries become

11   exponentially more severe—it is not as simple as adding one painful experience to

12   another. *See* Dkt. No. 144 at 63–64. His conclusions stem from treating "hundreds

13   and hundreds" of traumatized children, adolescents, and adults since 1953,

14   following their progress, and "studying the adverse childhood experience literature

15   and the trauma literature." From these sources of information and study, he has

16   found that "[t]here is a logarithmic or exponential quality to the accumulation of

17   these adversities." *Id.*

18       Dr. Kliman's experiential knowledge has been subjected to scientific scrutiny,

19   as he has "presented and gotten peer-reviewed responses to as long as a 63-year

20   follow-up on a traumatized patient" to support his understanding of compounding

21   trauma. *Id.* at 64. And Dr. Kliman testified that the work of the ACE (Adverse

22   Childhood Experience) researchers at the Center for Disease Control, Kaiser, and

23   the California Surgeon General's Office supports his method and reasoning. *See id*;

*see also id*. at 259–60 (explaining ACE literature and agreeing that "there's physiological and psychological impacts of ACE compounding over childhood").

After reviewing his testimony and report, the Court finds that Dr. Kliman more likely than not applied accepted standards and principles in a reliable manner here. *See* Fed. R. Evid. 702; Fed R. Evid. 104(a). Dr. Kliman appropriately integrated his clinical observations with established scientific literature to form well-reasoned opinions relevant here.

Third, Secret Harbor argues that Dr. Kliman's testimony is inadmissible because he opines on witness credibility and provides legal conclusions. "As a general rule, 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' Fed. R. Evid. 704(a)." *Nationwide Transp. Fin. V. Cass Info Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). "That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Id*. (emphasis in original) (quoting *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted)). In the same vein, "testimony regarding a witness's credibility is prohibited unless it is admissible as character evidence" because "'[i]t is the juror's responsibility to determine credibility by assessing the witness and witness testimony in light of their own experience.'" *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998) (quoting *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985)).

Secret Harbor maintains that Dr. Kliman's testimony inherently bolsters Plaintiffs' credibility by accepting Plaintiffs' factual accounts of abuse as true. After reviewing the deposition testimony, however, the Court finds that this characterization of Dr. Kliman's testimony is inaccurate; Dr. Kliman explained how he interpreted the information he received from Plaintiffs. *See e.g.*, Dkt. No. 144 (Dr. Kliman dep.) at 362 (explaining MMPI validity scores), 370–71 (referencing evidence), 373 (explaining why he believed that a particular account of abuse occurred). As the Ninth Circuit has recognized in other contexts, diagnoses in the field of psychiatry "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). That is simply "the nature of psychiatry." *Id*.

And notably, it seems that Secret Harbor elicited Dr. Kliman's most direct opinions on Plaintiffs' credibility—over counsel's objections—when it deposed Dr. Kliman. *See* Dkt. No. 144 (Dr. Kliman dep.) at 289 (asking Dr. Kliman to compare C.D.'s testimony in a separate proceeding to his testimony in this proceeding to determine whether C.D. is "credible"), 359–60 ("Q. Do you think O.H. is credible? . . . Q. Do you think [he] is believable?"), 371 (asking if Dr. Kliman reviewed the evidence in this case to make a "determination of [O.H.'s] credibility"), 381 ("Q. [N]owhere in any document have you seen . . . evidence that O.H. was sexually abused at Secret Harbor?"), 383 ("Q. . . . And have you looked at C.D.'s Facebook posts before he got contacted by these lawyers?").

As for improper legal conclusions, Secret Harbor's argument on this point is sparse. *See* Dkt. No. 141 at 13. It maintains that Dr. Kliman's report is full of legal

1    conclusions, focusing on his use of "neglectful" in describing aspects of Secret

2    Harbor's conduct. *See id.*; *see also* Dkt. No. 158 at 14–15. While such phrasing could

3    raise a successful Rule 403 objection at trial, Dr. Kliman's use of "neglectful" as a

4    descriptor in his reports does not transform his opinions into improper legal

5    conclusions. Put another way, he does not opine that Secret Harbor was negligent

6    under Washington common law.

7          Lastly, Secret Harbor argues that the Court should exclude Dr. Kliman's

8    testimony because, if admitted, the risk of unfair prejudice to Secret Harbor

9    substantially outweighs the testimony's probative value. *See* Fed. R. Evid. 403. Dr.

10   Kliman's testimony is probative, as it discusses Secret Harbor's standard of care,

11   causation, and damages in this negligence case. Secret Harbor's unfair prejudice

12   argument is based on the specific word choices in Dr. Kliman's expert report

13   discussed in the preceding paragraph. *See* Dkt. No. 141 at 13. Depending on how

14   the testimony comes out at trial, a Rule 403 objection may be appropriate to avoid

15   confusion. But an expert's use of arguably inflammatory adjectives in their report is

16   not a reason— by itself—to exclude that expert's opinions, especially at the

17   summary judgment phase. Nor is the fact that some of Dr. Kliman's testimony may

18   be cumulative a reason to exclude *all* of Dr. Kliman's expert testimony on summary

19   judgment. Accordingly, the Court overrules Secret Harbor's Rule 403 objection with

20   leave to renew.

21         In sum, the Court finds that Dr. Kliman's expert testimony satisfies Rule

22   702. The Court overrules Secret Harbor's Rule 403 objection with leave to renew.

23

1

2

**2.3    The Court grants in part Defendant's motion to exclude the testimony of Hasani Baharanyi, M.D.**

Secret Harbor moves to exclude Plaintiffs' expert Dr. Baharanyi's testimony, essentially raising the same arguments it presented against Dr. Kliman, with the added contention that Dr. Baharanyi is not qualified to render standard of care opinions, which he concedes. Dkt. No. 142; *see* Dkt. No. 144 at 8.

The Court finds that Dr. Baharanyi's expert testimony meets Rule 702's standards. He is a board-certified psychiatrist with experience working with children in group homes, children with PTSD, and children who have been victims of sexual abuse. *See* Dkt. No. 144 (Dr. Baharanyi dep.) at 600, 610–612. In his current practice, Dr. Baharanyi treats children and adults. *Id.* at 610. As Dr. Baharanyi does not purport to offer opinions on Secret Harbor's standard of care, *see id.* at 580, the Court grants Secret Harbor's motion in part, limiting his testimony accordingly.

The Court rejects Secret Harbor's remaining arguments for the same reasons articulated above in its analysis of Dr. Kliman's testimony. *See supra* § 2.2. Dr. Baharanyi's opinions are adequately founded on case documents, deposition testimony, interviews, and psychometric testing. His testimony is helpful and probative regarding Plaintiffs' injuries and damages, and Secret Harbor's Rule 403 objection is overruled with leave to renew at trial.

1

2

### 2.4 The Court denies Defendant's motion to exclude the testimony of Sherryll Kraizer, Ph.D.

Lastly, Secret Harbor moves to exclude the expert testimony of Sherryll Kraizer, Ph.D., arguing primarily that she lacks sufficient qualifications to opine on residential treatment facility standards of care given her limited direct experience in such settings, and that she employs an arbitrary "standard of care" that exceeds Washington legal requirements and exists "only in her head" rather than in established industry standards. Dkt. 143 at 6–7. Secret Harbor also raises arguments about reliability, foundation, improper credibility assessments, and inflammatory language as it did against Drs. Kliman and Baharanyi.

The Court denies the motion, as it is satisfied that Dr. Kraizer's testimony satisfies Rule 702's standards. To start, Dr. Kraizer is qualified to render standard of care opinions here. She has a bachelor's degree in education, a master's degree in psychology, a Ph.D. in education, and an administrator and principal certification and license. Dkt. No. 159 at 20. (Kraizer Report, Qualifications). Dr. Kraizer has held many high-level positions relevant to her work here. *See id*. She has published her research in the field of child abuse prevention and has trained "thousands of educators and . . . organization staff to establish policies, procedures, and practices to prevent maltreatment and meet the applicable standards of care [for preventing and reporting child abuse and neglect]." *Id*. Her longstanding membership in the International Society for the Prevention of Child Abuse and Neglect, where she has been a peer reviewer for the *International Journal on Child Abuse and Neglect* for

1    25 years, and her certification as a Title IX administrator and investigator further

2    support her qualifications in this area.

3         The Court rejects Secret Harbor's argument that Dr. Kraizer failed to use

4    reliable principles and methods. In her report, Dr. Kraizer explains her method—

5    the way she conducts her investigations—clarifying that she follows the standard

6    process in her field. *See* Dkt. No. 159 at 21. Likewise, the Court concludes that Dr.

7    Kraizer had sufficient facts and data to form her opinions on a more-likely-than-not

8    basis.

9         Secret Harbor's argument that Dr. Kraizer improperly assessed Plaintiffs'

10   credibility is attenuated and unsupported, particularly since Dr. Kraizer herself

11   testified that she made no such assessment. Dkt. No. 143 at 12. And Secret Harbor's

12   claim that her standard of care opinions constitute improper legal opinions

13   misunderstands Washington law, which distinguishes between regulatory

14   compliance and professional standards of care. *See Walter Fam. Grain Growers, Inc.*

15   *v. Foremost Pump & Well Servs.*, LLC 506 P.3d 705, 711–12 (Wash. Ct. App. 2022).

16   Given the high probative value of Dr. Kraizer's testimony on the applicable

17   standard of care, the Court overrules Secret Harbor's Rule 403 objection.

18   **2.5   The Court grants in part Plaintiffs' motion to exclude certain expert
         testimony.**

19

20        Plaintiffs' motion asks the Court to exclude expert testimony from Dr.

21   Richard Adler, M.D., and from Secret Harbor's standard-of-care expert, Neal

22   Sternberg. Dkt. No. 146. The Court grants the motion in part.

23

### 2.5.1  Dr. Adler.

Dr. Adler performed Rule 35 examinations, including interviews and numerous psychological tests, on both Plaintiffs. Broadly, Dr. Adler opines that Plaintiffs' injuries cannot be traced back to their alleged abuse at Secret Harbor and that Plaintiffs failed to mitigate their damages. *See* Dkt. No. 162 at 75 (conclusions regarding O.H.), 108 (conclusions regarding C.D.). Plaintiffs ask the Court to exclude these opinions because they lack foundation and because they constitute impermissible expert testimony on witness credibility.

The Court excludes Dr. Adler's testimony on mitigation for two reasons: first, since summary judgment on Secret Harbor's failure to mitigate defense is warranted, such testimony is neither relevant nor helpful under Rule 702. Second, Dr. Adler lacks the requisite foundation to offer these opinions.

Dr. Adler testified that he hadn't reviewed C.D.'s treatment records, didn't know how often C.D. attended treatment sessions and couldn't say whether C.D. "has actually been compliant with treatment recommendations." Dkt. No. 149 at 77–78 (Dr. Adler dep.). As for O.H., Dr. Adler testified, "again, I don't know what he's done with his treater"; he also concluded that therapy probably wouldn't help O.H., while failing to explain what kind of alternative treatment would. *Id*. at 78. This insufficient foundation would preclude reliable testimony on mitigation, even if it were relevant. *See Lister v. Hyatt Corp.*, Case No. 18-cv-0961, 2019 WL 6701407, at *15 (Dec. 9, 2019) (Robart, J.) (quoting *Hawkins v. Marshall*, 962 P.2d 834, 839 (Wash. Ct. App. 1998) (finding no evidence that plaintiff's failure to follow her doctor's advice aggravated her conditions or delayed her recovery)).

As for causation, Dr. Adler's conclusion that he can't causally connect the alleged abuse to Plaintiffs' injuries is not actually a causation opinion, but rather an assessment of whether the evidence he reviewed supports Plaintiffs' sexual abuse allegations. Dkt. No. 161 at 7; *see also* Dkt. No. 162 at (conclusions regarding O.H.), 108–09 (conclusions regarding C.D.). This is an issue properly reserved for the jury. *See United States v. Bash*, Case No.: 1:20-cr-00238, 2025 WL 51210, at *21 (E.D. Cal. Jan. 8, 2025) ("If such help from an expert was needed, the jury would be left to sit back and let the professionals tell them what their verdict should be.") (citing Ninth Circuit Model Instructions "emphasiz[ing] to jurors that it is their role to weigh the evidence"). To the extent that Dr. Adler's testimony on this point constitutes a causation opinion, it isn't helpful—jurors don't need an expert to tell them that non-existent abuse couldn't cause harm.

Moreover, Dr. Adler's testimony on these points lacks foundation and reliability. Fed. R. Evid. 702, 403. While an expert need not review every piece of evidence to provide opinion testimony, Dr. Adler concluded that the evidence doesn't support Plaintiffs' claims of sexual abuse while refusing to review evidence related to Plaintiffs' claims of sexual abuse. *See* Dkt. No. 161 at 13; *see also Klein v. Meta Platforms, Inc.*, Case No. 20-cv-08570, 2025 WL 489871, at *3 (N.D. Cal. Feb. 13, 2025) (explaining trial judges evaluate the data offered by an expert "to determine if that data provides adequate support to mark the expert's testimony as reliable" (quotation and citation omitted)). Dr. Adler justified this approach by describing his role as a defense medical expert held to a lower standard because Plaintiffs bear the burden of proof. When asked why he didn't review records potentially corroborating

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

O.H.'s accounts, he stated, "it's the burden of the plaintiff's expert," and even conceded he had been sent O.H.'s records but chose not to review them. Dkt. No. 162 at 37, 74–75. To be sure, Plaintiffs bear the burden of proof on their legal claims, but Rule 702 still requires expert testimony to be based on sufficient facts and data, and the proponent of expert testimony must establish adequate foundation. *See* Fed. R. Evid. 702, *see also Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) (proponent of expert testimony must establish that it more likely than not meets Rule 702's standards).

For these reasons, Dr. Adler is precluded from testifying: (1) that there is insufficient evidence of the alleged abuse; and (2) that one cannot establish a causal connection between the Plaintiffs' injuries and their alleged abuse at Secret Harbor. The Court also finds that expert testimony on these points would be substantially more prejudicial than probative and excludes it separately on those grounds. Fed. R. Evid. 403.

### 2.5.2  Sternberg.

Turning to Sternberg, Plaintiffs argue that his opinions lack sufficient facts and data under Rule 702(b) because Secret Harbor failed to provide him with key documents. On review of the record, the Court finds that Plaintiffs' assertion goes to the weight of Sternberg's testimony, not its admissibility. Accordingly, the Court will not exclude Sternberg's testimony on that basis.

But the Court agrees that Sternberg improperly opines on Plaintiffs' credibility and excludes those opinions, finding that they impermissibly invade the

province of the jury. Sternberg testified that he uses a "forensic" method to determine a plaintiff's credibility—he reviews evidence, then considers relevant factors like "collaboration in the documentation," "consistency in [the plaintiff's] statements," "triggering events" that may "motivate[e]" a plaintiff to make false statements, the plaintiff's body language when providing deposition testimony, and the opportunities that a plaintiff has had throughout their life to report their sexual abuse before litigation. *Id*. at 173–74.

These credibility assessment considerations fall squarely within the jury's exclusive domain. *See Bash*, 2025 WL 51210, at *21; 9th Cir. Manual of Model Civil Instr. 1.14 (explaining that the jury should evaluate witness testimony by considering "the witness's memory," "the witness's interest in the outcome of the case," "the reasonableness of the witness's testimony in light of all the evidence," "whether other evidence contradicted the witness's testimony," and "any other factors that bear on believability").

Thus, Sternberg's opinions on Plaintiffs' reliability are not helpful and improper under Rule 702.

### 3.   SECRET HARBOR'S MOTION FOR SUMMARY JUDGMENT

Secret Harbor moves for summary judgment, arguing that Plaintiffs' claims are time-barred and that they failed to establish the elements of their WLAD. The Court finds that summary judgment is inappropriate.

### 3.1  Legal standard.

Summary judgment is appropriate when there are no genuine disputes of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. On summary judgment, the Court views all facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 363 (9th Cir. 2024).

### 3.2  Issues of material fact preclude summary judgment on Secret Harbor's statute of limitations defense.

Because the Parties dispute when Plaintiffs' claims accrued, Secret Harbor is not entitled to summary judgment on its statute of limitations defense. Washington has "a special statute of limitations," *Wolf v. State*, 534 P.3d 822, 829 (Wash. 2023) (en banc), that applies to "[a]ll claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse," RCW 4.16.340(1). Through this special statute, "the Washington Legislature specifically provided for a broad and generous application of the discovery rule to civil actions for injuries caused by childhood sexual abuse." *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 985 P.2d 262, 269 (Wash. 1999). Lawmakers believed this generous approach was necessary because victims "may know they are suffering emotional harm but may not be able to understand the connection between those symptoms and the abuse." *Wolf*, 534 P.3d at 830.

The special statute of limitations starts to run when a victim appreciates the "causal link between abuse and injury for which the suit is brought," not merely

when they discover the injury. *Wolf*, 534 P.3d at 830. (citing *Korst v. McMahon*, 148 P.3d 1081 (Wash. Ct. App. 2006) (citing RCW 4.16.340(1)(c))). For "claims of third-party negligence based on intentional sexual abuse," the statute of limitations does not run until the plaintiff "makes the causal connection between the third party's negligent act and resulting injur[ies]." *Id*. at 832 ("a negligence claim accrues when a victim recognizes the connection between a third party's wrongful conduct and the victim's resulting injury"). On summary judgment, plaintiffs do not carry the burden of proving their claims are *not* time-barred; the defendant, as the moving party, bears the burden of proving the absence of genuine issue of material fact as to whether the plaintiff's claims are too old. *Wolf,* 534 P.3d at 833.

Here, issues of material fact preclude summary judgment. Plaintiffs have produced evidence showing that they did not discover or appreciate the requisite causal connection until recently. Plaintiffs' expert psychiatrist, Dr. Kliman, testified that, "on a more probable than not basis and to a reasonable degree of medical certainty that [Plaintiffs] have only just begun to process their traumatic experiences and are far from a full appreciation of the connection between the childhood sexual abuse and symptoms they experienced[.]" Dkt. No. 156 at 4 (Kliman, M.D. decl.). Dr. Kliman also opines that O.H. had defensively coped with his childhood trauma, which "can hinder the healing process by creating resistance to therapeutic attempts to process the trauma." *Id*. at 5–6.

Secret Harbor's own expert psychiatrist testified that C.D. did not understand "the connection between alleged events at Secret Harbor and [the] symptoms he experienced," until the lead-up to this litigation. *See* Dkt. No. 162 at 107. C.D.'s

1   testimony supports this conclusion; he explains that he knew something was wrong

2   and that he was suffering, but he "didn't recognize [these things] for what they

3   were." He "didn't know what to call it," and when he left Secret Harbor, he tried to

4   manage it by repressing it with drugs and alcohol. Dkt. No. 155 at 8–10 (C.D. dep.).

5        As to Plaintiffs' WLAD claims specifically, Secret Harbor argues they do not

6   fall within the scope of Washington's special statute of limitations and are thus

7   time-barred. *See id.* at 11–15. This argument is unconvincing. To start, the special

8   statute of limitations applies to "'all' tort claims, both intentional and negligent, for

9   which the gravamen of the claim is the childhood sexual abuse." *See Wolf*, 534 P.3d

10  at 108 (citing RCW 4.16.340(1)(c)); *see also C.J.C.*, 985 P.2d at 267–68 (reasoning

11  that the special statute of limitations applies when childhood sexual abuse is the

12  "starting point" for the plaintiff's legal claim (citation omitted)). The Washington

13  State Supreme Court has held that sexual abuse may provide the starting point for

14  a WLAD claim, finding specifically that "discrimination can encompass intentional

15  sexual misconduct, including physical abuse and assault." *W.H. v. Olympia Sch.*

16  *Dist.*, 465 P.3d 322, 323 (Wash. 2020) (en banc).

17       To determine whether the tolling provisions apply to Plaintiffs' WLAD claims,

18  the Court must examine whether the alleged conduct constitutes "childhood sexual

19  abuse" as defined in RCW 4.16.340(5). The statute defines this as "any act . . .

20  which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 . . .

21  at the time the act was committed." For WLAD purposes, the relevant inquiry is

22  whether the alleged conduct constitutes "sexual contact" under RCW 9A.44.010—

23

1  defined as "any touching of the sexual or other intimate parts of a person done for

2  the purpose of gratifying sexual desire of either party."

3      The allegations in this case involve forced sexual acts that would clearly

4  constitute violations of chapter 9A.44 RCW—specifically, sexual contact with

5  minors and rape of a child. *See* RCW 9A.44.073–.089. The alleged conduct goes well

6  beyond mere inappropriate touching; Plaintiffs allege they were subjected to sexual

7  assault and rape. Unlike cases involving ambiguous touching such as kisses on the

8  cheek or pats on the back, the conduct alleged here plainly meets the statutory

9  definition of "childhood sexual abuse" under RCW 4.16.340(5). *Cf. Sanchez v.*

10  *Aberdeen Sch. Dist. No. 5,* No. 21-5236 RJB, 2022 WL 136835, at *6 (W.D. Wash.

11  Jan. 14, 2022) (plaintiff was not entitled to tolling under RCW 4.16.340 because

12  alleged "kisses and pats" did not constitute childhood sexual abuse under chapter

13  9A.44 RCW or RCW 9.68A.040).

14      Accordingly, issues of material fact preclude summary judgment on Secret

15  Harbor's statute of limitations defense for all claims, including Plaintiffs' WLAD

16  claim.

17  **3.3  Summary judgment on Plaintiffs' WLAD claim is inappropriate.**

18      Secret Harbor argues that its residential treatment facility for youth does *not*

19  constitute a "place of public accommodation" under the WLAD and that summary

20  judgment is thus warranted. Because this determination involves disputed material

21  facts that a reasonable jury could resolve in Plaintiffs' favor, summary judgment is

22  inappropriate.

23

1   The WLAD applies to places of "public resort, accommodation, assemblage,

2   [and] amusement" and not to "any institute, bona fide club, or place of

3   accommodation, which is by its nature distinctly private." RCW 49.60.040(2).

4   Whether an establishment constitutes a place of public accommodation is an issue

5   of fact. *See Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1329 (1996) (en banc).

6   Secret Harbor argues that Plaintiffs' WLAD claim fails as a matter of law because

7   Secret Harbor is a "distinctly private" organization that is not subject to the WLAD.

8   Dkt. No. 138 (Secret Harbor's motion) at 24–25.

9   Washington courts construe the WLAD's definition of "public accommodation"

10   broadly to effectuate its remedial purpose. *See Fraternal Order of Eagles, Tenino*

11   *Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 59 P.3d 655, 662 (Wash.

12   2002) (en banc). The WLAD defines "public accommodation" broadly, providing a

13   lengthy but non-exhaustive list of examples. *Id.* at 671 (citing RCW 49.60.040(2)

14   ("Definitions")). Such places include but are not limited to: (1) facilities for "those

15   seeking health, recreation, or rest," (2) places "where food or beverages of any kind

16   are sold for consumption on the premises," (3) places "where medical service or care

17   is made available," (4) "any public library or educational institution," (5) "schools of

18   special instruction," (6) "day care centers", and (7) "children's camps."

19   RCW 49.60.040(2).

20   The record contains substantial evidence that Secret Harbor provided

21   services matching several statutory examples. The facility offered residential

22   mental health treatment, behavioral health services, educational services,

23   medication monitoring, and access to healthcare for its residents. Dkt. No. 155 at

43–44. A reasonable jury could conclude these services align with RCW 49.60.040(2)'s examples of places where "medical service or care is made available," "educational institutions," or "schools of special instruction."

Secret Harbor's primary argument—that it cannot be a public accommodation because it is not freely and regularly open to the general public— misinterprets the statute and contradicts controlling precedent. *See* Dkt. No. 138. The Washington State Supreme Court has rejected such a narrow construction of "public accommodation" and specifically held that an establishment with selective admissions criteria may nonetheless constitute a public accommodation. *See Fraternal Order of Eagles, Tenino Aerie No. 564*, 59 P.3d at 667, 672 (holding that an Eagles fraternity with a selective admissions process was not "distinctly private" and thus could not discriminate against women). Further, courts must construe the "distinctly private" exception narrowly to effectuate WLAD's remedial purpose. *Id*.

Secret Harbor also asserts that WLAD does not apply here because Secret Harbor is analogous to a prison, and courts in this district have concluded that prisons are not places of public accommodation. *See* Dkt. No. 138 at 25. Secret Harbor argues that like prisoners, the children at Secret Harbor could not unilaterally decide to leave the premises. *See id*. at 24–25. But that is true of most children's spaces—day cares, schools, and summer camps typically do not allow children to leave without a parent or guardian (or permission from a parent or guardian), yet the WLAD expressly defines these places as places of public accommodation. *See* RCW 49.60.040(2). The restriction on children's movement does not transform these facilities into "distinctly private" institutions.

Moreover, Secret Harbor's corporate representative agreed that during the relevant timeframe, "Secret Harbor was a program that was open to the public to place their children into if the need arose[.]" *See* Dkt. No. 147 at 18. This admission, combined with the facility's provision of educational, mental health, and healthcare services, creates a genuine issue of material fact regarding whether Secret Harbor constitutes a place of public accommodation under WLAD.

Accordingly, the Court denies Secret Harbor's motion for summary judgment on Plaintiffs' WLAD claim. Dkt. No. 138.

## 4.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs request partial summary judgment on the duty, breach, and causation elements of their negligence claim, as well as on Secret Harbor's affirmative defenses. The Court grants the motion in part, as discussed below.

### 4.1  Partial summary judgment is warranted on Plaintiffs' negligence claim.

Plaintiffs are entitled to summary judgment on the duty element of their negligence claim, but not on the breach or causation elements.

Generally, a person has no legal duty to protect another from a third person's harmful conduct. *Barlow v. State*, 540 P.3d 783, 786 (Wash. 2024) (en banc). But Washington law imposes such a duty when a "special relationship" exists, as defined by Section 315 of the *Restatement (Second) of Torts*. § 315 (Am. Law Inst. 1965). *Id*. This special relationship "create[s] a heightened duty to protect someone in a situation where that person is 'helpless, totally dependent, or under the complete control of someone else for decisions relating to their safety.'" *Id*. at 788

1   (quoting *Turner v. Washington State Dep't of Soc. & Health Servs.*, 493 P.3d 117,

2   126 (Wash. 2021) (en banc)).

3       Secret Harbor, as a residential treatment center for emotionally troubled

4   youth, had a special relationship with Plaintiffs during their residency. The

5   evidence establishes that Plaintiffs were minor children placed in Secret Harbor's

6   care and depended on the facility for their safety and wellbeing. Washington courts

7   have specifically recognized that such protective relationships "include the

8   relationships between schools and their students, innkeepers and their guests,

9   common carriers and their passengers, and hospitals and their patients." *Turner*,

10  493 P.3d at 126 (quoting *H.B.H. v. State*, 429 P.3d 484, 492 (2018)); *see also McLeod

11  v. Grant Cnty. Sch. Dist. No. 128*, 255 P.2d 360, 362 (1953) (holding high school had

12  a duty to protect students from rape by other students because the "harm fell within

13  a general field of danger which should have been anticipated").

14      Secret Harbor does not dispute that it owed Plaintiffs this legal duty. *See

15  generally* Dkt. No. 163 (Secret Harbor's response brief). Based on the precedent

16  cited and Secret Harbor's response, the Court finds that Plaintiffs are entitled to

17  summary judgment on the duty element of their negligence claim.

18      As for the breach and causation elements, issues of material fact preclude

19  summary judgment. The jury will need to determine whether Secret Harbor met the

20  applicable standard of care based on the evidence presented, including the

21  testimony of Sternberg—Secret Harbor's liability expert. *See generally* Dkt. No. 162

22  at 180–200 (Sternberg report). Sternberg opines that Secret harbor "documented

23  claims as they were made and took reasonable steps to address inappropriate

1  actions by staff and clients to maintain a safe environment and mitigate ongoing

2  risk." *Id.* at 181. Secret Harbor also disputes whether Plaintiffs were sexually

3  abused while living at Secret Harbor, providing evidence that tends to rebut

4  Plaintiffs' accounts of abuse. *See e.g.*, Dkt. No. 164 at 221–225 (Buck-McCourt dep.).

5  And, as explained above, issues of material fact remain on Secret Harbor's statute

6  of limitations defense. These factual disputes must be resolved by a jury, making

7  summary judgment on breach and causation inappropriate.

**4.2  Affirmative defenses.**

Plaintiffs also move for summary judgment on Secret Harbor's affirmative

defenses. Secret Harbor did not oppose summary judgment on the following

affirmative defenses: (1) failure to join indispensable parties; (2) failure to state a

claim; and (3) collateral estoppel and res judicata. So the Court grants summary

judgment dismissing these defenses and addresses the remaining defenses below.

**4.2.1  Failure to mitigate.**

"When an alleged failure to mitigate concerns the plaintiff's failure to secure

or submit to medical treatment, a defendant must show that there were alternative

treatment options available to the plaintiff and that the plaintiff acted

unreasonably in deciding on treatment." *Salisbury v. City of Seattle*, 522 P.3d 1019,

1028 (Wash. Ct. App. 2023). Notably, "[a] 'mere *possibility of [a] benefit*' from a

course of medical treatment is insufficient to warrant a failure to mitigate

instruction." *Id.* at 1029 (quoting *Cox v. Keg Rests. U.S., Inc.*, 935 P.2d 1377, 1380

(1997)) (emphasis added). Rather, "[t]o support a mitigation instruction, expert

testimony must establish that the [identified] alternative treatment *would more likely than not* improve or cure the plaintiff's condition." *Id*. at 1029. (quoting *Fox v. Evans*, 111 P.3d 267, 271 (Wash. Ct. App. 2005)) (emphasis added). In other words, "[t]he defendant's burden of proof to establish failure to mitigate includes a causation component" that must be satisfied with expert testimony. *Id*. This expert testimony "is necessary to give the jury a basis on which 'to segregate the damages' between the damages proximately caused by the underlying injury and the portion that was avoidable due to the failure to mitigate." *See id*. (quoting *Fox*, 111 P.3d at 271) (emphasis added). Without such evidence, the jury would be forced to speculate about which injuries are attributable to any failure to mitigate. *See id*. at 1029–30.

Secret Harbor has not submitted the required expert testimony. In fact, its forensic psychiatrist, Dr. Adler, opined that he could not reach any causation opinions to the requisite degree of medical certainty. *See* Dkt. No. 162 at 75, 108–09 (Dr. Adler's initial reports). Accordingly, no genuine dispute of material fact exists, and Plaintiffs are entitled to judgment as a matter of law on Secret Harbor's failure-to-mitigate affirmative defense.

### 4.2.2    Contributory negligence. [1]

Secret Harbor's contributory negligence claim is legally unavailable based on Washington precedent established in *Christensen v. Royal Sch. District No. 160*, 124

---

[1] Even though Washington has abolished the contributory negligence doctrine and adopted a comparative fault scheme, Washington courts often refer to comparative fault as contributory negligence. *Anderson v. Grant Cnty.*, 539 P.3d 40, 46 n.4 (Wash. Ct. App. 2023) (acknowledging continued use of the phrase "contributory negligence" for consistency in the case law).

P.3d 283, 287 (Wash. 2005) (en banc). There, the plaintiff pursued a negligence claim against her school district, alleging it failed to protect her from sexual abuse by a teacher. The Washington State Supreme Court dismissed the school district's contributory negligence defense, broadly holding that "[the] defense . . . should not be available to the perpetrator of sexual abuse or to a third party that is in a position to control the perpetrator." 124 P.3d at 287 (citing *Niece v. Elmview Grp. Home*, 131 Wash.2d 39, 44, 929 P.2d 420 (1997) and *McLeod v. Grant Cnty. Sch. Dist. No. 128*, 255 P.2d 360, 362 (1953)). The court found that it is inappropriate to compare a plaintiff's alleged negligence to the willful conduct of an intentional tortfeasor. *Id.* (quoting *Hutchison ex rel. Hutchison v. Luddy*, 763 A.2d 826, 848 (Pa. 2000)). The court held that "contributory fault may not be assessed against a 13–year–old child based on the failure to protect herself from being sexually abused when the defendant or defendants stand in a special relationship to the child and have a duty to protect the child." *Id.*

While school districts may argue that students were contributorily negligent in certain cases, Secret Harbor cites no Washington precedent holding that a child can be contributorily negligent for their own sexual assault. Additionally, adopting Secret Harbor's reasoning would contravene *Christensen's* holding. *See* 124 P.3d at 287. Because the defense of contributory negligence is legally unavailable to Secret Harbor here, summary judgment dismissing this defense is appropriate.

### 4.2.3  Superseding cause.

To be a superseding cause, an act must be "so highly extraordinary or unexpected that [it] can be said to fall [ ] [out of] the realm of reasonable foreseeability as a matter of law." *Roemmich v. 3M Co.*, 509 P.3d 306, 315–16 (Wash Ct. App. 2022) (citations and quotation marks omitted). But if the acts are "within the ambit of the hazards covered by the duty imposed upon the defendant, they are [inherently] foreseeable and do not supersede the defendant's negligence." *Id*. (citations and quotation marks omitted). As the Washington State Supreme Court has held:

> [i]f the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

*Campbell v. ITE Imperial Corp.*, 733 P.2d 969, 972–73 (Wash. 1987) (en banc) (quoting *Restatement (Second) of Torts* § 449 (1965)).

Secret Harbor fails to identify any highly extraordinary or unexpected act that could qualify as a superseding cause. If Secret Harbor argues that the alleged sexual abuse itself was the unforeseeable and superseding or intervening act, this argument fails because Secret Harbor had a duty to protect Plaintiffs from precisely this type of harm. *See Campbell*, 733 P.3d at 972–73 (holding wrongful conduct of a third party does not alleviate defendant's liability if defendant was negligent for failing to protect plaintiff against that very conduct).

Secret Harbor cites *Tegman v. Accident & Medical Investigations Inc.*, 75 P.3d 497 (Wash. 2003), to argue that the jury must segregate damages caused by

negligent tortfeasors from damages caused by intentional tortfeasors. Dkt. No. 163 at 22–23. But the *segregation of damages* between negligent and intentional tortfeasors discussed in *Tegman* is distinct from *apportionment of fault* under Washington's comparative fault statute. Indeed, the segregation principle does not permit negligent defendants to avoid liability through the superseding cause doctrine. *Rollins v. King Cnty. Metro Transit*, 199 P.3d 499, 502–03 (Wash. Ct. App. 2009).

For these reasons, summary judgment dismissing Secret Harbor's superseding cause defense is warranted.

### 4.2.4  Laches.

Laches is an equitable affirmative defense based on the doctrine of estoppel. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw, Inc.*, 277 P.3d 18, 30 (Wash. Ct. App. 2012). To establish laches, the defendant must prove that a plaintiff's "inexcusable delay" in filing a lawsuit caused prejudice to the defendant. *Auto. United Trades Org. v. State*, 286 P.3d 377, 379 (Wash. 2012) (en banc). And there must be "some change in a party's condition that would make a delay in asserting a claim inequitable." *K.C. v. State*, 10 Wash. App. 2d 1038, 2019 WL 4942457, at *9 (Wash. Ct. App. Oct. 8, 2019) (citing *Newport Yacht Basin*, 277 P.3d at 30–31) ("holding "[t]o constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce [that claim]" (citation omitted)).

1    The Washington Court of Appeals rejected the application of laches to a

2    childhood sexual abuse case in an unpublished decision. *See id*. Citing legislative

3    history, the court reasoned that "the legislature recognizes that sexual abuse

4    victims' delay in filing lawsuits is excusable delay." *Id*. Consequently, defendants

5    cannot meet the first element of laches—"inexcusable delay"—as a matter of law in

6    childhood sexual abuse cases. *Id*. This was true in *K.C. v. State even though* issues

7    of material fact existed as to the timeliness of the plaintiff's claim under the special

8    statute of limitations for childhood sexual abuse. *See id*. ("Additionally, we conclude

9    that genuine issues of material fact exist as to whether the statute of limitations

10   bars KC's claim."). This Court finds the Washington Court of Appeals' reasoning

11   persuasive.

12   Secret Harbor cites no Washington precedent applying the doctrine of laches

13   to claims based on childhood sexual abuse. *See generally* Dkt. No. 163 at 24–27. And

14   it identifies no change in condition that would make it unfair or inequitable for

15   Plaintiffs to bring their claims now. *See id*. Instead, Secret Harbor raises general

16   concerns about fading memories and lost evidence. *See id*. at 27. But these are the

17   kinds of general concerns that the Washington Legislature inherently considered in

18   passing the special statute of limitations and in finding that victims of childhood

19   sexual abuse should be permitted to bring legal claims later in life.

20   Accordingly, the Court grants summary judgment and dismisses Secret

21   Harbor's laches defense.

22

23

### 4.2.5   Pre-existing conditions.

The Court is not convinced that Washington law recognizes "pre-existing conditions" as an affirmative defense. *Cf. Needham v. Dreyer*, 454 P.3d 136, 145 (Wash. Ct. App. 2019) (discussing pre-existing conditions as a causation theory and not an affirmative defense). Indeed, Washington precedent generally discusses the "pre-existing conditions" argument as a causation theory—not as an independent legal claim or defense. *See id*. Thus, to the extent that Secret Harbor advances "pre-existing conditions" as an independent affirmative defense, the Court grants Plaintiffs' motion and dismisses it on summary judgment.

This ruling, however, does not prevent Secret Harbor from presenting evidence and arguing that Plaintiffs' pre-existing conditions caused their injuries. The Court simply finds that "pre-existing conditions" is not an affirmative defense under Washington law. If Plaintiffs seek to preclude evidence or argument related to pre-existing conditions, they should move to exclude it under the Federal Rules of Evidence. *See id*. (assessing expert testimony on pre-existing conditions under the evidence rules).

## 5.   CONCLUSION

It is hereby ORDERED:

- The Court DENIES Secret Harbor's motion for summary judgment. Dkt. No. 138.

- The Court DENIES Secret Harbor's motion to exclude testimony of Gilbert Kliman, M.D., with leave to renew its Rule 403 objection. Dkt. No. 141.

- The Court GRANTS IN PART Secret Harbor's motion to exclude testimony of Hasani K. Baharanyi, M.D. Dkt. No. 142. Dr. Baharanyi may not testify about the standard of care.

- The Court DENIES Secret Harbor's motion to exclude testimony of Dr. Sherryll Kraizer. Dkt. No. 143.

- The Court GRANTS IN PART Plaintiffs' Motion to exclude certain expert testimony, consistent with this Order. Dkt. No. 146.

- The Court GRANTS IN PART Plaintiffs' motion for partial summary judgment, Dkt. No. 145, as follows: (1) GRANTS summary judgment on the duty element of Plaintiffs' negligence claim; (2) DENIES summary judgment on the breach and causation elements of Plaintiffs' negligence claim; (3) GRANTS summary judgment dismissing Secret Harbor's affirmative defenses of: a. failure to join indispensable parties; b. failure to state a claim; c. collateral estoppel and res judicata; d. failure to mitigate; e. contributory negligence; f. superseding cause; g. laches; and h. pre-existing conditions stated as an affirmative defense.


Dated this 29th day of April, 2025.

Jamal N. Whitehead
United States District Judge